| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

-----------------------------------------------------------x

In re:                                              CHAPTER 11
                                                    Case Nos. 05-12117 (ALG)

WINGS DIGITAL CORPORATION

                             Debtor.

-----------------------------------------------------------x

## MEMORANDUM OPINION

**APPEARANCES**

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.
Attorneys for the Debtor
1345 Avenue of the Americas, Floor 31
New York, New York 10105
        By:    Arnold Michell Greene, Esq.
                Fred B. Ringel, Esq.
                Robert M. Sasloff, Esq.

SULLIVAN & CROMWELL, LLP
Attorneys for United States Philips Corporation
        By:    Maura Miller, Esq.
                Patricia Cyr, Esq.

MITCHELL, SILBERBERG & KNUPP LLP
Attorneys for Recording Industry Association of America
11377 West Olympic Boulevard
Los Angeles, California 90064
        By:    Wayne R. Terry, Esq.

BACKENROTH FRANKEL & KRINSKY LLP
Proposed Attorneys for the Official Committee of Unsecured Creditors
489 Fifth Avenue
New York, New York 10017
        By:    Mark A. Frankel, Esq.

FINKEL GOLDSTEIN ROSENBLOOM & NASH LLP
Attorneys for ZWT, Inc.
26 Broadway, Suite 711
New York, New York 10004
        By:    Kevin J. Nash, Esq.

PERETORE & PERETORE, P.C.
Attorneys for Wells Fargo Equipment Finance Inc.
110 Park Street
Staten Island, New York 10306
        By:    Frank Peretore, Esq.

ROSEN PREMINGER & BLOOM LLP
Attorneys for Eshman Holdings Ltd.
708 Third Avenue, Suite 1600
New York, New York 10017
        By:    Paula G. A. Ryan, Esq.

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

There are two motions before this Court in connection with the Chapter 11 filing of Wings Digital Corporation (the "Debtor"). The first is a motion by the Debtor, filed eleven days after the petition itself, seeking to sell nearly all assets of the estate to ZWT, Inc. ("Purchaser"), a newly formed shell corporation owned by Harminder Bhasin ("Bhasin"). The second motion was filed seven days after the petition by United States Philips Corporation ("Philips"), a judgment creditor of the Debtor, seeking to dismiss the Chapter 11 case or, in the alternative, to convert the case to a proceeding under Chapter 7.

Philips' motion is supported by the Recording Industry Association of America ("RIAA"), and they both have also filed papers in opposition to the Debtor's sale motion. Meanwhile, the Debtor's sale motion is supported by the newly formed Committee of Unsecured Creditors (the "Committee"), Eshman Holdings Ltd. ("Eshman"), an alleged secured creditor of the estate, and Wells Fargo Equipment Finance Inc. ("Wells Fargo"), an equipment lessor of the Debtor whose property would be assigned in the sale and whose debt would be assumed in full.

2

# FACTS

The Court held an evidentiary hearing on May 3, 2005 (the "Hearing"), on both the sale motion and the motion to convert or dismiss. At the Hearing, the Court took testimony from Maninder Sethi ("Sethi"), the sole shareholder and controlling principal of the Debtor, and Bhasin, principal of the proposed Purchaser. Most of the testimony concerned the issue of the Debtor's good faith, whether Bhasin is a good faith purchaser, and whether there exist any inappropriate connections between the Debtor and ZWT, Inc. or the companies' respective principals that would compromise the legitimacy of the assertedly arm's length transaction.

Both Philips and RIAA question the Debtor's good faith in all respects. They allege that the Debtor, under the control of Sethi, has a seven-year history of patent and/or copyright infringement, failure to pay license royalties, and insider transactions made with the intent to hinder, delay and defraud creditors. Philips is currently suing the Debtor and Sethi in the U.S. District Court for the Eastern District of New York (the "ED Action"), claiming that the Debtor and Sethi have continued to produce compact discs ("CDs") unlawfully without a valid license (which was revoked in 2003) and by infringement of Philips' patents in the production of digital video discs ("DVDs"). In 2003, Philips also obtained a State court judgment for $868,234.23 against the Debtor, reflecting unpaid license royalties and contractual interest through October 31, 2003. When it attempted to enforce the judgment, a company in which Sethi's brother has an interest, Eshman, claimed it held a security interest in the Debtor's property senior in priority to Philips', and a proceeding was brought under CPLR 5239 to determine the priority of the two parties' positions. Hearings were held in New York State Supreme Court on March 11 and 17, 2005, and in an opinion issued by Justice Yates, the court

held that Eshman did not have a security interest superior to that of Philips, that Eshman was a front for Maninder Sethi's mother and brother, and that the transactions among the Sethi family were "nothing more than a fraudulent attempt to artificially inflate the value of the companies owned by them and to prevent collection of debts they incurred." *Eshman Holdings Ltd. v. United States Philips Corp. & Wings Digital Corp.*, Index No. 012785/04 at 6 (Sup. Ct. N.Y. Co. April 15, 2005). The State court pointed to various badges present in the transfers demonstrating "clear and convincing evidence" of fraud, namely, intrafamilial transfers, lack of consideration, and the timing of the transactions themselves. *Id.* at 6-7. While the Debtor and Eshman challenge this decision, and have indicated that they will appeal, this Court does not have jurisdiction to review a State court decision. See e.g., *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198-200 (2d Cir. 1996) ("a Federal court cannot reexamine a State court judgment").

    Philips argues that the sale is part of the same continuing fraud – a ruse to evade the interests of legitimate creditors – and that it should be denied on that basis alone. There certainly are unusual and troublesome aspects to the proposed sale. First, the testimony was clear that Bhasin is not in the business of CD and DVD replication and had no knowledge of the requirements for operating such a business legally. Additionally, Bhasin had conducted only a cursory review of the assets to be purchased and no valuation of the assets independent of that provided by Sethi, despite the purchase price of $650,000 and subsequent investments estimated at around $500,000 that will be required to replace obsolete equipment. When questioned as to why he was going forward with the purchase, considering the many variables and uncertainties present in the transaction, and particularly the possibility that he would simply inherit the ED Action, Bhasin could only answer that would rely on the advice of his lawyer, his

4

accountant, and his own sound business judgment as evidenced through his many successful ventures. He said he was certain that if he could not get the necessary licenses he would find "a way" to use the purchased assets, but he was unable to articulate exactly what – if any – use he had in mind.

**I.     The Sale Motion**

The Court finds that it is not necessary to determine the good faith of either the Debtor or Bhasin at this time. The law in the Second Circuit is clear; a debtor cannot routinely sell all of its assets at the beginning of a Chapter 11 case over objection. In *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983), the Court considered whether a sale of the debtor's most valuable asset, "out of the ordinary course of business and prior to acceptance and outside of any plan of reorganization" could be effectuated over objection under § 363 of the Bankruptcy Code. 722 F.2d at 1066. Lionel's CEO testified at the sale hearing that the asset was not depreciating, that there was no reason why the asset could not be sold as part of a reorganization plan, and that the sole reason for the sale at the time was the creditors' committee's insistence upon it. *Id*. at 1065. The Second Circuit held that an asset that could form the basis of a reorganization plan could not be sold outside of a plan unless there was a compelling business justification therefor. *Id.* at 1070. See also *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Beker Indus. Corp.*, 64 B.R. 900, 906 (Bankr. S.D.N.Y. 1986) *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988) ("a sale of assets out of the ordinary course of business prior to a formulation of a plan of

5

reorganization is entirely inappropriate at this early crucial stage where the path the Debtor will take is to be determined") (internal quotations omitted).[1]

In this case, the Court finds that the Debtor has failed to make an adequate record as to the business reasons necessitating a sale of substantially all of the Debtor's assets a few days after the filing. The only indication of any need for speed is the fact that the purchase contract contains a closing deadline of May 30, 2005; the Debtor has made no showing that a sale of assets could not be arranged at a later date. Of the $650,000 sale price, approximately $400,000 is allocated to the purchase of equipment valued by an appraiser at $346,350. (Debtor's Ex. 1). Despite testimony indicating that the equipment is out of date and will need to be upgraded, there is no proof that the equipment is depreciating so rapidly that it must be sold immediately or not at all. Similarly, inventory valued by the Debtor at $71,872 is being sold for $50,000, and there is no evidence that the inventory will be worth less if the sale does not take place immediately. (Debtor's Ex. 2). Further, it appears that $200,000 of the purchase price was allocated toward the purchase of accounts receivable, valued by the Debtor at $452,878.27. (Debtor's Ex. 3). Although it was established at the Hearing that there is no provision in the sale contract for any adjustment in the price due to a reduction in receivables, there was also no testimony that this Debtor is losing money or not generating new receivables to offset the old ones. In fact, no information of substance was introduced as to the Debtor's current business and cash receipts and disbursements. Sethi's testimony was entirely vague on that issue, and Bhasin was uninformed as well. There is no indication on the record that

---

[1] The rule against a sale of all assets prior to a plan of reorganization is even stricter in the Fifth Circuit. In *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983), the Circuit Court held that the trustee could not sidestep the confirmation requirements under Chapter 11 by entering into agreements that would "specify the terms whereby a reorganization plan is to be adopted", noting that the "parties…must first scale the hurdles erected in Chapter 11." *Id.*

6

the business would not be worth as much, if not more, if the sale were to be held pursuant to a plan or, if grounds can be shown, in a § 363 transaction at a later date.

Based on the foregoing, the Debtor's only real substantiation for its claim that the sale must take place on an expedited basis is the testimony of Sethi himself that he does not wish to continue with the litigation and no longer chooses to be active in the CD and DVD replication industry. As discussed below, that is justification for putting a Chapter 11 trustee in place. However, under the facts of this matter, it is not evidence of extraordinary circumstances that would, under *Lionel*, justify approving the asset sale over objections at this early date.

## II.    The Motion to Convert or Dismiss

As noted, both Philips and RIAA moved for conversion of the case to a case under Chapter 7 or alternatively for its dismissal. At oral argument they also supported the appointment of a Chapter 11 trustee. In support of their position, Philips and RIAA relied on the decision of Justice Yates and the long history of the Debtor's failure to pay license fees and alleged unlawful operation and infringement of patents and copyrights. The Debtor in turn denied infringing patents or copyrights, pointed out that no relief has been entered in the ED Action, and claimed that it could continue to operate legally by subcontracting business to third parties. As discussed above, the Debtor also asserted that the decision of Justice Yates is wrong, and also that the Debtor was not a real party in interest in the CPLR 5239 proceeding and thus that the findings of fraud do not collaterally estop it on the issue and cannot justify a motion to convert or dismiss.

The Bankruptcy Code provides that a case may be converted or dismissed upon request of a party in interest, after notice and hearing, for cause. 11 U.S.C. § 1112(b). The burden is on the moving party to establish cause, and courts do not lightly either

7

convert or dismiss Chapter 11 cases. See *In re Adbrite Corp.*, 290 B.R. 209, 221 (Bankr. S.D.N.Y. 2003) (discussing the non-exclusive list of factors that may constitute cause at length and noting that the factors must be considered in light of the facts of the particular case).

In the present case, as further discussed below, it is premature to conclude that this Debtor has no alternative other than the immediate liquidation of its assets under Chapter 7. Moreover, dismissal of the case would provide little, if any, hope for any of the Debtor's creditors other than (perhaps) Philips. Unlike *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304 (2d Cir. 1997), relied on by Philips, this case does not involve a two-party dispute, and there is no question that the Debtor needs financial rehabilitation.

While the case for conversion or dismissal has not been made, the need for new management is clear. Sethi testified unequivocally that he no longer wants to have anything to do with the Debtor; this was a principal reason for the sale. In *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 355 (1985), the Supreme Court noted that "the willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." (internal quotation omitted). When it is clear, as here, that the Debtor's principal is unable or unwilling to fulfill his responsibilities, there is a void that must be filled. See *In re Ngan Gung Restaurant, Inc.*, 195 B.R. 593, 599 (S.D.N.Y. 1996) (noting as one factor in its determination that appointment of a trustee was appropriate, that the Debtor "could not fulfill its fiduciary obligations").

Courts in this Circuit have found that appointment of a trustee is appropriate relief when grounds for a motion to convert or dismiss are found to be inadequate. See *In re*

8

*Cohoes Indus. Terminal, Inc.*, 65 B.R. 918 (Bankr. S.D.N.Y. 1986), *aff'd on other grounds, Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 226 (2d Cir. 1991). Bankruptcy courts have broad discretion to appoint a trustee, and may do so *sua sponte.* 2 L. King, et al., *Collier on Bankruptcy* ¶ 1104.02 (15th ed. 1979). The grounds for appointment of a Chapter 11 trustee are set forth in §1104(a) of the Bankruptcy Code as follows:

> a court shall order the appointment of a trustee –
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> (2) if the appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a). In the present case, the Court need not determine whether the findings of Justice Yates regarding fraud would alone justify the appointment of a trustee; sufficient cause exists under § 1104(a)(2) to appoint a Chapter 11 trustee at this time.

The standard for appointment of a trustee pursuant to § 1104(a)(2) requires that such appointment be in the best interests of *all* parties in interest. 2 L. King, et al., *Collier on Bankruptcy*, ¶ 1104.02 (15th ed. 1979). This is a lesser standard than that under § 1104(a)(1), which requires that the party requesting appointment of a trustee prove fraud, dishonesty, incompetence or gross mismanagement. 11 U.S.C. § 1104(a)(1). Section 1104(a)(2) provides the court with more discretion, requiring it to balance the "factors and interests carefully," as appointment of a trustee will create additional expenses for the estate. *In re North Star Contracting Corp.*, 128 B.R. 66, 70 (Bankr. S.D.N.Y. 1991). In *In re McCorhill Publ'g, Inc.*, 73 B.R. 1013 (Bankr. S.D.N.Y. 1987),

9

the court was faced with a motion to convert or dismiss, or, in the alternative, to appoint a trustee or examiner. It noted that there was "no showing that the debtor was experiencing continuous losses or that reorganization was unlikely," and it therefore concluded that conversion or dismissal would be premature. *Id.* at 1018. Then, while recognizing that the appointment of a trustee is often considered extraordinary relief, it found a trustee to be "in the best interests of creditors and all parties in interest in order to investigate the financial affairs of the debtor." *Id.* at 1017. The *McCorhill* court based its decision on "questionable inter-company financial transfers" and the fact that "the principals of the debtor occupy conflicting position in the transferee companies . . .". *Id.*[2] See also, *In re Bellvue Place Assocs.* 171 B.R. 615 (Bankr. N.D. Ill. 1994), where the court found that none of the factors enumerated in § 1104(a)(1) had been clearly established by the movant but that cause existed where the debtor was unable to discharge its fiduciary duties. *Id.* at 624.

Factors that courts have found relevant in making a determination to appoint a Chapter 11 trustee include:

      (i)    trustworthiness of the debtor;
      (ii)   the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
      (iii)  the confidence – or lack thereof – of the business community and of creditors in present management;
      (iv)  the benefits derived by the appointment of a trustee, balanced against the cost of appointment.

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Each of these factors supports the appointment of a Chapter 11 trustee in this case.

---

[2] Investigation of the financial affairs of this Debtor would be one of a trustee's most important tasks.

10

First, several major creditors have questioned the trustworthiness of the Debtor, and while this Court makes no finding at this time as to the honesty of the Debtor, it appears from the record that there is sufficient cause to at least raise a question.

Second, there can be no argument that the Debtor's past performance has been questionable and the Debtor has no plan for improving performance in the future. In fact, this Debtor has made clear that a continuation of its present business under Sethi is impossible. For one thing, as discussed above, Sethi is no longer interested in operating the business. He stated repeatedly on record at the Hearing that a sale is the only possible course of action for the Debtor.

As for the confidence of the business community and creditors, some creditors supported a sale but none supported Sethi. Insofar as evidence regarding the opinion of the business community was established by RIAA, a trade organization, it was negative. It is unlikely that the lack of confidence in this Debtor will dissipate absent a change in management. On the other hand, if there were a Chapter 11 trustee in place, the trustee might be able to obtain the licenses and rights necessary to operate the business successfully. RIAA and Philips supported the appointment of a Chapter 11 operating trustee to assume control of the business and attempt to reorganize it.

Finally, the issue of cost is also relevant, as a Chapter 11 trustee will place a financial burden on the estate. However, it is apparent that the benefits of a Chapter 11 trustee would far outweigh the uncertainty. A trustee would be able to put some order into the Debtor's business affairs and provide some answers regarding income and expenses, something that current management seemed unable or unwilling to do at the Hearing. Moreover, as indicated above, this Debtor does apparently have equipment that is usable in its business, as well as forty employees. Hopefully, appointing a trustee will

11

start a new chapter for the benefit of the Debtor, causing Philips and RIAA to reevaluate their position toward providing the Debtor a license or licenses, in light of (among other things) their own pecuniary interests as creditors.  There is no reason to presume that the Debtor's future under new management will be negative.  Moreover, a trustee could determine whether a sale is in the best interests of the estate and perhaps make the showing of business justification required under *Lionel*.  Appointment of a trustee and the trustee's adoption of the sale would eliminate concern as to the *bona fides* of the transaction and vindicate the public interest in a fair Chapter 11 process.

Thus, there is no reason to assume that a Chapter 11 trustee could not formulate a plan or (if appropriate) obtain a higher and better offer for the assets to be sold.  Further, if Bhasin is acting in good faith, and the trustee decides to go forward with a sale, Bhasin might be a buyer.

## **CONCLUSION**

For the reasons stated above, the sale motion is denied at this time.  The motion to convert or dismiss is granted only insofar as to direct the U.S. Trustee to appoint a Chapter 11 trustee for this Debtor as soon as practicable.  Philips is directed to settle an order on two days' notice.

Dated:  New York, New York
       May 16, 2005                           __*/s/ Allan L. Gropper*_____
                                                      UNITED STATES BANKRUPTCY JUDGE